# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-10-00407-CV

**Renee Sheree O'Carolan, Appellant**

**v.**

**Gary D. Hopper, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-FM-98-010618, HONORABLE JEFF L. ROSE, JUDGE PRESIDING

## O P I N I O N

We withdraw the opinion and judgment dated June 21, 2013, and substitute the following opinion and judgment in their place. We deny appellant's motion for rehearing.

Renee Sheree O'Carolan appeals from three pretrial orders, the order denying her motions for new trial and to modify and correct the judgment, and the final judgment rendered by the trial court on her remanded claim for division of community property. The remand followed an appeal from the parties' divorce, which became final on May 1, 2000. This Court had remanded O'Carolan's claim for property division in 2002, holding that the trial court erred by awarding appellee, Gary D. Hopper, all of the community property and only awarding spousal maintenance to O'Carolan. *O'Carolan v. Hopper*, 71 S.W.3d 529, 535-36 (Tex. App.—Austin 2002, no pet.).

On remand, the trial court awarded 55% of the community property to O'Carolan and 45% to Hopper. In six issues, O'Carolan challenges the trial court's: (1) dismissal of her claim for enforcement of the original spousal-maintenance award, (2) dismissal of her request for a new order on spousal maintenance, (3) grant of summary judgment in Hopper's favor on her third-party fraud claim, (4) valuation of property as of the time of the divorce, (5) award of title to the real property to Hopper retroactive to the date of the divorce, and (6) assessment of penalties and attorneys' fees in the amount of $2,000 as sanctions.[1] We will reverse and remand in part because we conclude that O'Carolan's claim for enforcement of the spousal-maintenance order was not barred by limitations. We will affirm in part because the trial court (1) properly dismissed O'Carolan's claim for continuing spousal maintenance and (2) did not abuse its discretion by valuing the community estate as of the time of the divorce, awarding the title to and the debt on the real property and any equitable rights arising in the property after 2000 to Hopper, and awarding Hopper $2,000 in attorneys' fees as sanctions for a discovery dispute. Our affirmance of the trial court's award of the equitable rights arising in the property after 2000 to Hopper renders O'Carolan's fraud claim moot on appeal.

**BACKGROUND**

We provide here a brief overview of the procedural history of this case and will provide a more detailed explanation of various events within our discussion of the issues. As

---

[1] A visiting district court judge, The Honorable Margaret A. Cooper, presided over the hearings related to the spousal-maintenance issues. Another visiting district court judge, the Honorable Gus Strauss, presided over the hearing at which the court considered the motion to compel discovery and for sanctions. The Honorable Jeff L. Rose presided over the trial on the merits.

mentioned above, the parties' divorce became final on May 1, 2000. In the divorce decree, the trial court awarded the marital residence (the "Dripping Springs property"), the vehicles, the life insurance policy, and numerous items of personal property to Hopper. The decree also awarded all retirement funds, IRAs, and pensions from Hopper's employment to him, although he had testified that they had no remaining value. *Id.* at 532. Hopper was ordered to pay the debt against the house and vehicle and any debt that he incurred after the parties' separation. O'Carolan was awarded various items of personal property. She was assigned any debt that she had incurred after the parties' separation, including $60,000 in medical expenses. *Id.* The trial court ordered Hopper to pay O'Carolan $36,000 in spousal maintenance over a two-year period on the following schedule: $1,000 per month for three months; $1,500 per month for the next eighteen months; and $2,000 per month for the last three months.

O'Carolan appealed. In 2002, this Court found that not only did the record "show a total absence of evidence to support an unequal division of property in Hopper's favor, the majority of factors would support a disproportionate division in O'Carolan's favor." *Id.* at 532. In particular, we noted the disparity in the parties' income, earning capacity, and business opportunities, as well as the evidence of O'Carolan's serious health issues. We stated that "[t]he evidence showed that O'Carolan suffered from a severe brain malformation. The problems caused by this brain malformation and its attendant surgery would impair O'Carolan's future earning ability." *Id.* at 532-33. We explained that while O'Carolan's health problems and lack of earning capacity may have made her a proper candidate for spousal maintenance, "such an award should not be made in lieu of any interest in the available community property." *Id.* at 534. Accordingly, we reversed

3

the part of the trial court's judgment dividing the community property and remanded for a new property division.

The record does not reflect what, if anything, happened with the remanded case between 2002 and 2008. Hopper's attorney for the remanded case testified that she took over as counsel for Hopper in late fall 2008 after O'Carolan's attorney had contacted Hopper's prior counsel. Below is a timeline of dates that relevant pleadings were filed, pretrial hearings occurred, and orders were entered (appealed orders appear in boldface type):

| | |
|---|---|
| March 11, 2009 | O'Carolan's second amended answer and counterpetition |
| May 6, 2009 | Hopper's first amended petition for divorce (one of his live pleadings at time of trial) |
| May 20, 2009 | Hopper's motion to strike pleadings |
| June 5, 2009 | Hearing on Hopper's motion to strike pleadings and motion to compel discovery and for sanctions; trial court reserved determination on motion to compel until June 15, 2009 pretrial hearing; trial court orally ruled that (1) O'Carolan's request for enforcement of spousal maintenance is barred by statute of limitations and dismissed claim with prejudice; (2) O'Carolan's request for a new order of spousal maintenance is barred by res judicata; and (3) O'Carolan's pleadings for intentional misrepresentation, conversion, and conspiracy were allowed to stand, but no determination was made as to whether those claims would be within the scope of remand |
| June 12, 2009 | O'Carolan's proposed disposition of issues |
| June 15, 2009 | O'Carolan's motion for rehearing of motion to strike |
| June 15, 2009 | Hearing on Hopper's motion to compel discovery and for sanctions and O'Carolan's motion for rehearing of Hopper's motion to strike and her reurging of her motion for |

4

continuance; oral ruling granting in part and denying in part motion to compel and for sanctions, denying motion for rehearing, and granting motion for continuance

| | |
|---|---|
| July 29, 2009 | **Order from June 15, 2009 pretrial hearing** |
| August 10, 2009 | O'Carolan's fifth amended counterpetition and second amended third-party petition (her live pleading at time of trial) |
| August 10, 2009 | Letter ruling from trial court regarding O'Carolan's claim for current spousal maintenance |
| August 10, 2009 | **Order entered on Hopper's motion to compel discovery and for sanctions and motion to strike pleadings from June 5, 2009 hearing** |
| August 31, 2009 | Hopper's answer to O'Carolan's fifth amended counterpetition and second amended third-party petition (one of his live pleadings at time of trial) |
| September 18, 2009 | Hopper's motion for partial summary judgment |
| September 23, 2009 | Hopper's first amended proposed disposition of issues |
| October 6, 2009 | O'Carolan's response to motion for partial summary judgment |
| October 6, 2009 | O'Carolan's objection to Hopper's summary-judgment evidence |
| October 6, 2009 | O'Carolan's second motion for rehearing of motion to strike |
| October 9, 2009 | Hearing on Hopper's motion for partial summary judgment, O'Carolan's objection to Hopper's summary-judgment evidence, her second motion for rehearing of motion to strike, and her motion for leave to file sixth amended original counterpetition and third amended original third-party petition |
| October 15, 2009 | **Order entered on motions from October 9 hearing** |

A trial was held in November 2009, and a jury heard testimony on the issue of the value of the community estate and made findings on the value of the various items of property as of May 1, 2000. The trial court then heard additional evidence on other factors relevant to a just and right division of the community property. After hearing all the evidence and considering the jury findings on the values of the community property, the trial court found that the total value of the community estate to be divided was $68,500. Specifically, the Dripping Springs property had been valued by the jury at $132,000, less the mortgage amount of $82,000, making the net value $50,000 as of the date of the divorce. The trial court found that a disproportionate distribution of 55% of the community property to O'Carolan and 45% to Hopper was a fair and just allocation of the community estate. When making its award, the trial court further considered the evidence about the various items of property in the possession of each party and also deducted $2,000 from O'Carolan's share for attorneys' fees awarded to Hopper for a pretrial discovery dispute. The trial court found that Hopper should pay O'Carolan $28,875 and awarded the Dripping Springs property to Hopper as his separate property. In addition, the trial court ordered that the community debt related to the Dripping Springs property, i.e., the balance due on the property's mortgage, was awarded to Hopper, and it confirmed "[a]ny and all equitable claims or equitable interest in the real property awarded to [Hopper] above, arising out of [Hopper's] conduct at any time after May 1, 2000" as Hopper's separate property.

O'Carolan filed a motion for new trial and a motion to modify and correct the judgment. The trial court denied both motions. This appeal followed.

**DISCUSSION**

O'Carolan's first three issues on appeal concern rulings of the trial court related to Hopper's motion to strike and motion for partial summary judgment. In her fourth issue, she contends that the trial court's pretrial ruling that the community property should be valued as of May 1, 2000 was error. Her fifth issue challenges the trial court's final judgment (as well as its denial of her motions for new trial and to modify and correct the judgment) awarding Hopper the Dripping Springs property and all equitable rights arising in the property after May 2000. In her sixth issue, O'Carolan challenges the trial court's order granting Hopper's motion to compel discovery and for sanctions. We provide the relevant background and standard of review within each section.

## I. Enforcement of spousal-maintenance award

In her first issue, O'Carolan challenges the trial court's dismissal with prejudice of her spousal-maintenance enforcement claim, which she raised in her March 11, 2009 second amended answer and counterpetition.[2] As previously mentioned, the divorce decree ordered Hopper to pay O'Carolan $36,000 in spousal maintenance over a two-year period; the record does not reflect whether Hopper ever made any maintenance payments to O'Carolan. In her pleading, O'Carolan sought to "be paid post divorce maintenance *as previously granted at the time of the divorce* in accordance with chapter 8 of the Texas Family Code." (Emphasis added.) O'Carolan challenges

---

[2] The March 11, 2009 pleading was the live pleading at the time the trial court dismissed O'Carolan's enforcement claim. O'Carolan continues to assert this claim and reiterated it in identical language in her fifth amended counterpetition and second amended third-party petition, her live pleading at the time of trial.

7

the trial court's dismissal of the claim on both procedural and substantive grounds. After a hearing on June 5, 2009, the trial court dismissed the enforcement claim in response to Hopper's motion to strike because it concluded that the claim is barred by limitations.[3] We will sustain O'Carolan's first issue because we conclude her enforcement claim is not barred by limitations.

O'Carolan first argues that Hopper's motion to strike her pleadings was not the proper procedural vehicle for seeking dismissal of her enforcement claim. Second, she argues that her enforcement motion was not barred by limitations. We will first address the procedural issue.

### A.      Propriety of motion to strike

Although the rules of civil procedure do not provide for a motion to strike pleadings (except in a motion for sanctions), Hopper asserted his affirmative defense of the running of the limitations period through a "motion to strike pleadings." This motion was procedurally improper. An opposing party should use special exceptions to challenge defects in the pleadings so that the pleader may attempt to cure them by amendment. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). Moreover, it is well settled that an affirmative defense like limitations must be proven through summary-judgment proceedings or at trial. *See, e.g.*, *In re D.K.M.*, 242 S.W.3d 863, 865 (Tex. App.—Austin 2007, no pet.) (collecting cases). Thus, the trial court erred by striking O'Carolan's pleading without providing her either the opportunity to

---

[3] Although the order was not filed with the clerk until August 10, 2009, it specifically stated that the "ruling was rendered in open court on June 5, 2009, was effective immediately upon its pronouncement on June 5, 2009," and was administerially signed on July 31, 2009.

replead or the procedural protections of the summary-judgment process.[4] Under the particular facts of this case, however, we conclude that the procedural error was harmless because it did not prevent O'Carolan from properly presenting this issue to us. *See* Tex. R. App. P. 44.1(a)(2). Consequently, we turn to O'Carolan's substantive complaint that her enforcement claim was not barred by limitations.

### B. Time period for enforcing spousal-maintenance order

Hopper stated in his motion to strike that the trial court's decision in the divorce proceeding was rendered on May 1, 2000, and the trial court signed the final divorce decree on August 17, 2000. The divorce decree awarded O'Carolan spousal-maintenance payments for twenty-four months, which Hopper asserted meant that the stream of payments was scheduled to end in 2002.[5] Hopper contended that the residual four-year statute of limitations should apply and that

---

[4] Hopper argues that any procedural error resulting from his challenge to the enforcement claim in his motion to strike was cured by his later filing of a motion for partial summary judgment. In that motion for partial summary judgment, however, he only challenged O'Carolan's claim to the extent she alternatively sought a *new* award of spousal maintenance. Therefore, that motion did not cure the error that resulted from his initial challenge to O'Carolan's enforcement claim. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (holding that summary-judgment motion must expressly present grounds upon which it is based).

[5] The divorce decree provided that the first spousal-maintenance payment was "due upon the surrender of 200 Hill Top Drive, Dripping Springs, Texas by Renee Sheree Hopper [O'Carolan] to Gary D. Hopper, and the [subsequent] payment[s] [were] due on the fifteenth day of each consecutive month thereafter" until the total award of $36,000 was paid. The trial court ordered O'Carolan to "vacate and surrender possession of 200 Hill Top Drive, Dripping Springs, Texas within thirty days of the signing of this decree." The decree was pronounced and rendered in court on May 1, 2000, and noted on the court's docket sheet on that date, but it was not signed until August 17, 2000. In Hopper's affidavit submitted with his motion for partial summary judgment, he stated that O'Carolan was ordered to vacate the marital home within 30 days of the date the final decree was entered, and she vacated the marital home in the summer of 2000. At trial, he testified that he believed that it was in August that he was to take possession of the house. O'Carolan testified that the last day that she was allowed to be at the house was September 16, 2000.

9

therefore O'Carolan should have filed an enforcement action no later than 2006. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008) (providing that every action for which there is no express limitations period must be brought not later than four years after day cause of action accrues).

O'Carolan did not file a written response to the motion to strike. After the hearing on Hopper's motion, she filed a proposed disposition of issues in which she asked that Hopper be "required to pay spousal support that was originally ordered by the trial court or . . . be found in contempt." At the hearing and in one of her subsequent motions for rehearing of the motion to strike, O'Carolan argued, and she continues to argue on appeal, that because the final divorce decree issued in 2000 was not a dormant judgment, limitations did not bar the trial court from hearing her enforcement claim. *See id.* § 34.001 (West Supp. 2012) (providing that judgment becomes dormant if writ of execution is not issued within ten years after rendition of judgment); *see also id.* § 31.006 (West 2008) (providing that dormant judgment may be revived by scire facias or an action of debt brought not later than second anniversary of date that judgment becomes dormant).[6] In both motions for rehearing of the motion to strike, in her proposed disposition of issues, and on appeal, O'Carolan also asserts that the failure to pay maintenance is enforceable by contempt without reference to a limitations period.

At the June 5, 2009 hearing, the trial court concluded that the only legal issue was whether O'Carolan had timely moved to enforce the order to pay spousal maintenance and that there was no fact issue between the parties about when this Court's decision on the appeal of the decree

---

[6] We will follow the lead of the majority of cases that have considered issues related to the dormancy period and refer to it as a ten-year dormancy period rather than a twelve-year period.

was issued, when the decree was signed, and what the decree said, which the trial court treated as the only relevant facts.[7] Applying the residual four-year statute of limitations, the trial court orally concluded that even assuming that the spousal-maintenance award was part of the first appeal and was not to be paid until after this Court's opinion was issued in March 2002, O'Carolan should have moved to enforce the award by March 2006. The trial court's order states that O'Carolan's "request for the enforcement of the trial court's order on spousal maintenance is barred by the statute of limitations" and that "[a]ny claim of Renee Sheree O'Carolan for enforcement of [Hopper's] spousal maintenance obligation under the Court's 2000 Final Decree of Divorce . . . [is] hereby DISMISSED WITH PREJUDICE."

Thus, the question presented is whether O'Carolan's enforcement claim was timely because the judgment in the divorce decree ordering Hopper to pay $36,000 was not dormant under Section 34.001 of the Civil Practice and Remedies Code, or whether her claim should have been brought within four years of the date the last installment was due under the residual four-year limitations period provided in Section 16.051 of the Civil Practice and Remedies Code. Our answer necessarily depends on our construction of the Family Code and the Civil Practice and Remedies Code. Statutory construction is a question of law, which we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

We begin by examining the language of the statutes. Our primary objective is to give effect to the legislature's intent, which we discern from the plain and common meaning of the

---

[7] Again, the record does not reflect whether Hopper ever made any maintenance payments to O'Carolan, or if he did, what the dates or amounts of those payments were.

11

statute's words. *See id.* If the statute's language is unambiguous, we must interpret it according to its plain meaning, giving meaning to the language consistent with other provisions in the statute. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439, 441 (Tex. 2011). We must read the statute as a whole, not just isolated portions. *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We should give effect to every sentence, clause, and word of a statute so that no part will be rendered superfluous. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). We presume that the legislature chooses a statute's language with care, purposefully choosing each word it includes, while purposefully omitting words not chosen. *TGS-NOPEC*, 340 S.W.3d at 439. We may consider other factors in ascertaining the intent behind a statute, including the statute's objective and the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023(1), (5) (West 2005) (establishing statutory-construction aids); *see also Shumake*, 199 S.W.3d at 284.

Maintenance proceedings are governed by Title 1, Chapter 8 of the Family Code. *See generally* Tex. Fam. Code Ann. §§ 8.001-.305 (West 2006 & Supp. 2011).[8] Section 8.059 governs the enforcement of a maintenance order. It provides several different mechanisms for enforcing the order:

- contempt;

_____

[8] Except where noted, we cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal, or in some instances, because intervening amendments were specifically made applicable to spousal-maintenance payments regardless of whether the payments become due before, on, or after the effective date of the amending act.

- after notice and a hearing, judgment for the amount of arrearage that is enforceable by any means available for the enforcement of judgment for debts; and

- garnishment of the obligor's wages.[9]

Subchapter C governs income withholding of spousal-maintenance payments. *See id.* §§ 8.101-.108 (West 2006). Section 8.103 allows a court to order income withholding to be applied toward spousal-maintenance arrearage even if current spousal maintenance is no longer owed. *Id.* § 8.103 (West 2006). Section 8.151 establishes that "[t]he court may issue an order or writ for withholding under this chapter *at any time* before all spousal maintenance and arrearages are paid." *Id.* § 8.151 (West 2006) (emphasis added).

O'Carolan argues that Chapter 8 does not establish a time limit within which a party must move to establish the amount of an arrearage and enforce maintenance payments awarded in a final judgment. In contrast, we note that Chapter 9 contains specific time limits for bringing a motion to enforce the property division set forth in a divorce decree. *Id.* § 9.001 (allowing enforcement of divorce decree providing for property division), .003 (establishing filing deadlines for suits to enforce division of tangible personal property in existence at time of decree and division of future property not in existence at time of decree) (West 2006). Section 157.005 of the Family Code similarly establishes specific time limitations on a court's retention of jurisdiction to render

---

[9] The version of Section 8.059 applicable to this case was renumbered from Section 8.009 and amended in 2001. Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 1, sec. 8.059, 2001 Tex. Gen. Laws 1574, 1577-78 (amended 2011) (current version at Tex. Fam. Code Ann. § 8.059). The amendments made in 2001 "appl[y] to spousal maintenance payments regardless of whether the payments become due before, on, or after the effective date of this Act." *Id.* at § 3, 1586.

a contempt order for failure to comply with a child-support order and to confirm the total amount of child-support arrearage and render a cumulative money judgment for past-due child support. *Id.* § 157.005 (establishing time limitation for court's retention of jurisdiction to render a contempt order and to confirm total amount of child-support arrearage and render cumulative money judgment) (West Supp. 2012).

Before these specific time limits were enacted by the legislature, courts had held that motions to enforce property division and to enforce child-support obligations were governed by the supreme court's decision in *Huff v. Huff*, 648 S.W.2d 286 (Tex. 1983). *See, e.g.*, *Ex parte Goad*, 690 S.W.2d 894, 896 (Tex. 1985) (explaining that motions to enforce division of future property were governed by holding in *Huff* before legislature enacted two-year filing period and applying ten-year period mandated by *Huff* because suit to enforce filed before enactment of two-year period); *In re Kuykendall*, 957 S.W.2d 907, 910-11 (Tex. App.—Texarkana 1997, no pet.) (explaining how post-*Huff* statutory amendments changed application of ten-year dormancy statute to past-due child support). In *Huff*, the supreme court held that the ten-year dormancy period governing the enforcement and revival of judgments applied to a motion to reduce past-due child support to a judgment. 648 S.W.2d at 289-90 (applying Tex. Rev. Civ. Stat. Ann. art. 5532, which was predecessor statute to Section 34.001 of Civil Practices and Remedies Code). Whether the court's reasoning in *Huff* also applies to a motion to enforce spousal maintenance is a question of first impression.

At the time that the supreme court decided *Huff*, the Family Code section governing enforcement of final decrees providing for child support was very similar to the 2001 version of the

14

section governing enforcement of final decrees providing for spousal maintenance.[10] Like the spousal-maintenance enforcement provision, the child-support provision allowed any order of the court to be enforced by contempt.[11] The Code also allowed a court to render judgment for any amount of child support unpaid and owing after notice to the defaulting party, and the judgment was enforceable by any means available for the enforcement of judgment for debts.[12]

The supreme court analyzed essentially the same question presented here—whether the ten-year dormancy period or the four-year residual statute of limitations should apply to an enforcement claim based on an award in a divorce decree. *Huff*, 648 S.W.2d at 287. In *Huff*, the father appealed the trial court's grant of the mother's motion to reduce past-due child support to judgment. *Id.* at 286. The trial court had awarded the mother over $28,000, representing more than five years' worth of unpaid child support, and the court of appeals had affirmed the award. *Id.* The father argued that the four-year statute of limitations should apply because the mother's motion is an independent claim for relief, not an action to enforce a final judgment. *Id.* at 287.

---

[10] *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, sec. 14.09, 1973 Tex. Gen. Laws 1411, 1425-26 (enacting Family Code Section 14.09), *repealed by* Act of May 27, 1985, 69th Leg., R.S., ch. 232, § 14, 1985 Tex. Gen. Laws 1158, 1170. When Section 14.09 was repealed, it was replaced by new Section 14.41, which was also subsequently amended before Title 2 was completely repealed and replaced by Title 5 in 1995. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 232, § 9, sec. 14.41, 1985 Tex. Gen. Laws 1158, 1163; *see also* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 282.

[11] Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, sec. 14.09, 1973 Tex. Gen. Laws 1411, 1425; *see also Huff v. Huff*, 648 S.W.2d 286, 288 n.4 (Tex. 1983).

[12] Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, sec. 14.09, 1973 Tex. Gen. Laws 1411, 1426; *see also Huff*, 648 S.W.2d at 288 n.4.

15

The supreme court disagreed and affirmed the court of appeals' decision. *Id.* at 289-90. The supreme court reasoned that divorce decrees are final judgments, distinguishable from other final judgments only by the remedies available for their enforcement. *Id.* at 287. Once the period for an appeal has run, res judicata precludes the child-support claim from further relitigation. *Id.* at 288. The possibility of prospective modification of support payments in no way changes the finality of the divorce decree. *Id.*

Both a motion to reduce the arrearage to a judgment enforceable by any means available to enforce a debt and a motion for contempt must be predicated on a valid final judgment. *Id.* (citing Tex. R. Civ. P. 55). The supreme court had previously held that a motion to reduce the arrearage to a judgment is not an independent claim for indebtedness. *Id.* at 289 (citing *Adair v. Martin*, 595 S.W.2d 513, 514 (Tex. 1980)). Instead, it is an enforcement remedy, like the motion for contempt, that is designed to assure payment of child support previously ordered in a final divorce decree. *Id.*

In *Huff*, the court determined that because the original divorce decree precludes any further adjudication of a right to child support, these enforcement motions "are clearly not separate claims that would come under the [four-year] catchall statute of limitation." *Id.* The court further explained that "[t]he fact that a parent facing sanctions under [these enforcement motions] has a right to be heard on the issue of arrearages does not mean the claim for child support is being relitigated." *Id.* Hearings on these motions are not de novo hearings on the right to support; instead, they are provided to guarantee due process of law to the parent facing sanctions. *Id.*

16

Consequently, the court concluded that the motion at issue to reduce child-support arrearage to a judgment enforceable by any means available to enforce a debt was a motion to revive and enforce a portion of a final judgment. *Id.* Examining the plain language of the statutes of limitation, the court held that this type of motion falls "within the direct purview of the [ten-year] statute of limitation governing the revival and enforcement of judgments" and is therefore excluded from the scope of the four-year residual statute by the language that narrows that statute's application to only those actions for which there is no express limitations period. *Id.* (discussing predecessor statutes to Tex. Civ. Prac. & Rem. Code §§ 16.051, 34.001). In addition, we note that Section 16.051 references only causes of action, and an unfulfilled obligation resulting from a judgment is not an independent cause of action. *See id.*

Hopper argues that the *Huff* ruling has been superseded by statutory amendment and that the ten-year dormancy period does not apply because the dormancy period begins to run upon the signing of the judgment confirming arrearage, not from the due date of individual payments. *See In re E.C.M.*, 225 S.W.3d 11, 13 (Tex. App.—El Paso 2005, no pet.) (citing *In re S.C.S.*, 48 S.W.3d 831, 836 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *In re Kuykendall*, 957 S.W.2d at 910). While Hopper is correct that statutory amendments to Chapter 157 of the Family Code superseded *Huff*'s applicability to child-support arrearage, no similar statutory amendments have been enacted that would affect its potential applicability to spousal-maintenance arrearage. Child-support enforcement now differs from spousal-maintenance enforcement in ways significant to the issue of dormancy.

Chapter 157 now provides that courts retain jurisdiction to confirm the total amount of child-support arrearage and render a cumulative money judgment for past-due child support if a

motion for enforcement requesting a money judgment is filed not later than the tenth anniversary after the date the child becomes an adult or the child-support obligation terminated under the child-support order or by operation of law. Tex. Fam. Code Ann. §§ 157.005, .263 (West Supp. 2012). In other words, the legislature has set up a procedure for child-support enforcement motions that extends the time period within which a court retains jurisdiction to consider a motion to reduce child-support arrearage to judgment *past the time* that the ten-year dormancy period would normally allow.[13] Similarly, the reason that the court decided in *Kuykendall* that the ten-year dormancy period should run upon the signing of the judgment confirming arrearage, not the due date of individual payments, was to effectuate the legislature's intent to permit a court to render judgment for older payments.[14]

The amended child-support provisions discussed in *Kuykendall* have no counterpart in the spousal-maintenance provisions. Moreover, nothing in the language of those provisions or

---

[13] In 2009, the legislature further reinforced its intent to extend the period for collecting past-due child support by completely eliminating the ten-year dormancy period's applicability to judgments for child support. *See* Tex. Civ. Prac. & Remedies Code Ann. § 34.001(c) (West Supp. 2012) ("This section does not apply to a judgment for child support under the Family Code.").

[14] Section 157.261 provides that each payment not timely made constitutes a final judgment for the amount due and owing; there is no similar provision for spousal-maintenance payments. *See* Tex. Fam. Code Ann. § 157.261 (West 2008) (formerly found in Section 14.41(a) before Title 5 replaced Title 2 of the Family Code in 1995). In *Kuykendall*, the court affirmed a trial court's judgment ordering a father to pay eighteen years of child support for payments due from 1981 through 1996 based on a motion filed in 1996 after determining that the "final judgment" language should not be read to activate the general ten-year dormancy provision, but instead the ten-year dormancy period should begin to run upon the signing of the judgment confirming arrearage. *In re Kuykendall*, 957 S.W.2d 907, 909-11 (Tex. App.—Texarkana 1997, no pet.) (noting that provision establishing untimely payments as separate and final judgments was enacted to provide legal basis for issuance of writ of income withholding); *see also, e.g., In re S.C.S.*, 48 S.W.3d 831, 835-36 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (affirming trial court's judgment ordering father to pay $94,666.14 for payments due from 1968 through 1985 when motion was filed in 1999).

the Civil Practice and Remedies Code supports Hopper's argument that before the ten-year dormancy statute begins to run, a party must reduce alleged an spousal-maintenance arrearage to judgment within four years.[15] First, Chapter 8 of the Family Code contains no language indicating that each missed spousal-maintenance payment constitutes a final judgment due and owing. Second, the statute does not require that arrearage be reduced to judgment before the spousal-maintenance order may be enforced by contempt or by an order for withholding. *See* Tex. Fam. Code Ann. §§ 8.059(a), .101(a). In addition, the statute plainly states that "[t]he court may issue an order or writ for withholding under this chapter *at any time* before all spousal maintenance and arrearages are paid." *Id.* § 8.151 (emphasis added). The remedies available to enforce the spousal-maintenance award in the divorce decree, like the remedies considered by the supreme court in *Huff*, must be predicated on a valid final judgment. *See Huff*, 648 S.W.2d at 288 (discussing motions for contempt and for reducing arrearage to judgment); *see also* Tex. Fam. Code Ann. § 8.101(a) (West 2006) (providing that court may order income withholding "[i]n a proceeding in which periodic payments of spousal maintenance are ordered, modified, or enforced"). The divorce decree ordering the payment of spousal maintenance is the valid final judgment at issue here. *See Huff*, 648 S.W.2d at 288. Finally, the plain language of the Civil Practice and Remedies Code provides that a writ of execution must be issued "within 10 years after the rendition of a judgment" to avoid dormancy. *See* Tex. Civ. Prac. & Rem. Code Ann. § 34.001(a).

---

[15] Hopper does not explain precisely when the four-year statute of limitations would have begun to run in this case.

We conclude that O'Carolan's spousal-maintenance enforcement claim should be governed by the supreme court's analysis in *Huff* because it is analogous to the child-support enforcement motion at issue in that case. *Cf. Pettit v. Pettit*, 704 S.W.2d 921, 924 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (applying *Huff* and holding that motion filed in 1984 to enforce agreement in 1979 divorce decree to divide separate property was action to enforce judgment and thus ten-year dormancy period applied, not four-year general statute of limitations); *Squires v. Squires*, 673 S.W.2d 681, 684-85 (Tex. App.—Corpus Christi 1984, no writ) (applying *Huff* when holding 1983 motion to reduce to judgment ex-husband's debt for unpaid military retirement benefits was suit to revive judgment in 1976 divorce decree and thus well within ten-year dormancy period); *see also In re Marriage of Ward*, 806 S.W.2d 276, 277 (Tex. App.—Amarillo 1991, writ denied) (holding ten-year dormancy statute began to run as payments became due, not as of date divorce decree became final, in action to enforce order to pay former spouse her proportionate share of ex-husband's military retirement benefits). As a result, we conclude that the ten-year dormancy period applies to the judgment in the parties' divorce decree for spousal maintenance, and thus, the trial court erred by dismissing O'Carolan's enforcement claim. We sustain O'Carolan's first issue.

We cannot render judgment, however, because of the procedurally improper way in which the trial court dismissed the claim. O'Carolan had no opportunity to present evidence supporting her enforcement claim. Consequently, we must remand the claim to the trial court for further proceedings in accordance with this opinion. *See* Tex. R. App. P. 43.3 (when reversing trial

20

court's judgment, appellate court must render judgment trial court should have rendered, except when remand for further proceedings is necessary).

## II.     Additional spousal maintenance

In her second issue, O'Carolan challenges the trial court's granting partial summary judgment in favor of Hopper and denying her request for additional spousal maintenance. As we will explain in more detail below, Hopper moved for summary judgment on both no-evidence and traditional grounds, asserting that (1) O'Carolan could not establish that the parties were still married, as required for a new award of maintenance; and (2) res judicata barred her claim because the trial court had awarded maintenance in the final decree, and she had not appealed that award. *See* Tex. R. Civ. P. 166a(c), (i).

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We examine the entire record in the light most favorable to the nonmovant, taking as true all evidence favoring the nonmovant if reasonable jurors could, and indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824-25, 827 (Tex. 2005). When the summary judgment does not state the grounds upon which it was granted, as in this case, we affirm the summary judgment if any theories presented in the motion are meritorious. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

As we further explain below, whether the trial court properly granted summary judgment on O'Carolan's spousal-maintenance claim depends on whether the original spousal-maintenance award is statutorily eligible for review and continuation. During the proceedings

below, both the trial court and Hopper treated O'Carolan's request as one for a *new* award of spousal maintenance. O'Carolan contended at the trial court and continues to argue on appeal that she seeks *continuation* of the spousal maintenance awarded under the original decree, which she alleges is proper under the Family Code because she has been declared permanently disabled.[16] Hopper responds on appeal that O'Carolan cannot seek continuation of the maintenance order because the trial court did not order in the original final decree that maintenance should continue indefinitely due to her disability. Because we ultimately conclude that the original award is not statutorily eligible for review and continuation, we will hold that the trial court properly granted summary judgment denying O'Carolan's claim for additional spousal maintenance.

---

[16] We are required to examine the entire record in the light most favorable to O'Carolan, the nonmovant. Reviewing the totality of O'Carolan's pleadings in the trial court shows that she sought the continuation of spousal maintenance that was previously awarded. In addition to requesting in her March 11, 2009 pleading that she "be paid post divorce maintenance as previously granted at the time of the divorce in accordance with chapter 8 of the Texas Family Code," O'Carolan also stated that:

> The marriage lasted longer than 10 years, [O'Carolan] lacks sufficient property to provide for [her] needs, and [O'Carolan] is unable to support self because of incapacitating physical or mental ability. Furthermore, [O'Carolan] lacks ability in labor market adequate to provide for [her] needs.

O'Carolan continued to assert this claim in her August 10, 2009 pleading, which was the live pleading at the time of both Hopper's motion for partial summary judgment and trial. In her June 12, 2009 proposed disposition of issues, O'Carolan asked that Hopper "be required to pay spousal support because of the disparity in the earning power, [O'Carolan's] physical condition and because [O'Carolan] meets the requirement for it," i.e., continuing spousal maintenance. In O'Carolan's October 6, 2009 second motion for rehearing of Hopper's motion to strike, she argued that the trial court erred by ruling that any claim for future maintenance was barred because the Family Code provides the remedy of additional maintenance in certain circumstances, and there had been no evidence before the court that negated all the bases for additional maintenance. And as discussed below, O'Carolan responded to Hopper's summary-judgment motion by asserting there was evidence that she was on Social Security disability relating back to the time period before the divorce.

22

## A. Procedural background

Before we consider the eligibility of the original award for review and continuation, we will explain the procedural background related to O'Carolan's claim for additional maintenance. Hopper moved to strike O'Carolan's claim for spousal-maintenance enforcement, arguing in part that because the trial court would be re-dividing the community property it "must also render an entirely new order on spousal maintenance." At the June 5, 2009 hearing, the trial court considered whether the order on remand contemplated a new order on spousal maintenance or only on property division. The trial court orally ruled that there should be no new order on spousal maintenance because spousal maintenance had been determined in the original decree and this Court's decision in *O'Carolan* did not disturb that determination; the only remanded issue was the property division. Accordingly, the trial court dismissed "any additional request for a new award of spousal maintenance" with prejudice in its order on Hopper's motion to strike. In the order, the trial court stated that res judicata barred the request for a new order of spousal maintenance because this Court had only remanded the issue of the division of community property and had not disturbed the trial court's ruling on spousal maintenance. *See O'Carolan*, 71 S.W.3d at 533-35 (holding that trial court should not have awarded spousal maintenance in lieu of any interest in available community property and remanding for new property division).

Hopper later moved for summary judgment on both no-evidence and traditional grounds. *See* Tex. R. Civ. P. 166a(i) and(c). Hopper asserted that although the court had previously heard the issue of O'Carolan's request for "a new award of spousal maintenance" by consent, he sought summary judgment on the claim to avoid objection about whether the issue had been tried

by consent. Hopper argued that the affirmative defense of res judicata barred O'Carolan from bringing an action for a new determination of spousal maintenance because the issue was ruled upon in the 2000 divorce decree, and O'Carolan did not appeal the court's ruling on that issue. Hopper also asserted that no evidence existed on an essential element of O'Carolan's claim. Relying on Section 8.051 of the Family Code, Hopper asserted that a party is only eligible for spousal maintenance in a suit for dissolution of marriage or in a proceeding for maintenance in which the marriage had been dissolved by a court that lacked personal jurisdiction over an absent spouse, and neither circumstance was present in this case. *See* former Tex. Fam. Code Ann. § 8.051.[17] In other words, Hopper argued that O'Carolan was no longer eligible for spousal maintenance because she cannot show that she is still his spouse.

O'Carolan responded that the Family Code provides the remedy of additional maintenance in certain circumstances, and there had been no evidence before the court that negated all the bases for additional maintenance.[18] She also asserted in her summary-judgment response that "as to future maintenance" there was evidence that she was on Social Security disability relating back to the time period before the divorce. As evidence, she attached an affidavit and extensive

---

[17] Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 1, sec. 8.051, 2001 Tex. Gen. Laws 1574, 1575 (hereinafter "former Tex. Fam. Code Ann. § 8.051") (renumbering from former Family Code Section 8.002) (amended 2005, 2011) (current version at Tex. Fam. Code Ann. § 8.051 (West Supp. 2012)).

[18] O'Carolan made this assertion in her October 6, 2009 second motion for rehearing of Hopper's motion to strike. The trial court heard argument on both this motion and her October 6, 2009 response to Hopper's motion for partial summary judgment at the summary-judgment hearing on October 9, 2009. The trial court accepted Hopper's representation that "the issue of an award of post-divorce spousal maintenance was not plead in his Motion to Strike, therefore rendering [O'Carolan's] Motion for Rehearing on the Motion to Strike as to the enforcement of spousal maintenance moot and therefore DENIED."

24

medical records. In her affidavit, she stated that she had recently been approved for Social Security disability and that the determination was that she had been disabled before the divorce. Hopper presented no evidence rebutting O'Carolan's evidence of her continuing disability. The trial court granted Hopper's motion for partial summary judgment "in all respects" and denied O'Carolan's claim for "post-divorce spousal maintenance."

### B. Eligibility of original spousal-maintenance award for continuation

On appeal, O'Carolan argues that Hopper did not carry his burden on summary judgment of establishing as a matter of law his affirmative defense that the divorce decree operates as res judicata to preclude the trial court from considering her request for *continuing* spousal maintenance. Hopper responds that the trial court correctly ruled that her claim for a new maintenance award was barred by res judicata.[19] Hopper also argues on appeal that the original order for spousal maintenance was not an order that may be reviewed for continuation of maintenance under former Family Code Section 8.054. *See* former Tex. Fam. Code Ann. § 8.054.[20] He argues that continuation is available only when the court's original order explicitly provides that maintenance will continue indefinitely.

---

[19] Hopper's related no-evidence argument—that O'Carolan is unable to demonstrate that she is still his spouse and that the statute only allows a claim for spousal maintenance to be made by a spouse—also depends on his characterizing O'Carolan's claim as seeking a "new" spousal-maintenance award. *See* former Tex. Fam. Code Ann. § 8.051.

[20] *See* Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 1, sec. 8.054, 2001 Tex. Gen. Laws 1574, 1576 (hereinafter "former Tex. Fam. Code Ann. § 8.054") (renumbering former Family Code Section 8.005) (amended 2005, 2011) (current version at Tex. Fam. Code Ann. § 8.054 (West Supp. 2012)).

To prevail on his motion for traditional summary judgment, Hopper must show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999). A movant seeking traditional summary judgment against another party's claim, as Hopper did, must conclusively negate at least one element of that claim or conclusively establish each element of an affirmative defense. *See Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In his traditional summary-judgment motion, Hopper sought to conclusively establish the elements of the affirmative defense of res judicata. *See Shah*, 67 S.W.3d at 842; *Centeq Realty*, 899 S.W.2d at 197. Res judicata, also known as claim preclusion, bars the relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and should have been litigated in the prior suit. *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or the presence of parties in privity with the prior parties; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008), *superseded by statute on other grounds*, Tex. Lab. Code § 61.051(c). Hopper asserted that res judicata barred O'Carolan's request for a new award of maintenance because the trial court had ruled on the maintenance issue in the final divorce decree and O'Carolan did not appeal on that issue.

O'Carolan attempted to negate the third element of res judicata in her response by establishing that her claim for additional maintenance was a continuation claim that could not have

been raised in the first action. To determine whether the maintenance award is statutorily eligible for review and continuation, we must analyze why the trial court awarded maintenance to O'Carolan in the final decree. The legislature enacted provisions for spousal maintenance to provide temporary and rehabilitative support for a spouse whose ability for self-support is lacking or has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *O'Carolan*, 71 S.W.3d at 533. The trial court has discretion to award spousal maintenance only if the party seeking maintenance meets specific eligibility requirements and either lacks the ability to support herself because of an incapacitating physical or mental disability or clearly lacks the earning ability to provide for her own minimum reasonable needs. *See* former Tex. Fam. Code Ann. § 8.051(2)(A), (C). The relevant portions of former Section 8.051 provide that the court may order maintenance for either spouse only if:

> (2) the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.054, and the spouse seeking maintenance:
>
> (A) is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability;
>
> . . . ; or
>
> (C) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054.

Former Tex. Fam. Code Ann. § 8.051.

Former Section 8.054 of the Family Code applies to the spousal-maintenance order in this case. It establishes the permissible duration of spousal-maintenance orders as follows:

27

(a) Except as provided by Subsection (b), a court:

    (1) may not order maintenance that remains in effect for more than three years after the date of the order; and

    (2) shall limit the duration of a maintenance order to the shortest reasonable period that allows the spouse seeking maintenance to meet the spouse's minimum reasonable needs by obtaining appropriate employment or developing an appropriate skill, unless the ability of the spouse to provide for the spouse's minimum reasonable needs is substantially or totally diminished because of:

        (A) *physical or mental disability*;

        (B) duties as the custodian of an infant or young child; or

        (C) another compelling impediment to gainful employment.

(b) If a spouse seeking maintenance is unable to support himself or herself through appropriate employment *because of an incapacitating physical or mental disability*, the court may order maintenance for an indefinite period for as long as the disability continues. The court may order periodic review of its order, on the request of either party or on its own motion, to determine whether the disability is continuing. The continuation of spousal maintenance under these circumstances is subject to a motion to modify as provided by Section 8.057.

Former Tex. Fam. Code Ann. § 8.054 (emphasis added).

Former Section 8.054(a) limits a trial court's award of spousal maintenance to no more than three years. *See id.* § 8.054(a). But under former Section 8.054(b), if the spouse seeking maintenance cannot support himself or herself because of physical or mental disability, the trial court may order spousal maintenance for a definite or indefinite period, as long as the disability continues. *See id.* § 8.054(b); *see also Stewart v. Stewart*, No. 01-04-01126-CV, 2006 WL 1028391, at *2 (Tex. App.—Houston [1st Dist.] Apr. 20, 2006, no pet.) (mem. op.) (construing the phrase "may order maintenance for an indefinite period" as allowing court to award maintenance "for any definite

28

period up to an indefinite period"). Extended maintenance is discretionary under the statute, even if a spouse is permanently disabled. *Tellez v. Tellez*, 345 S.W.3d 689, 693 (Tex. App.—Dallas 2011, no pet.); *see also* former Tex. Fam. Code Ann. § 8.054(b) (when spouse is unable to support self "because of an incapacitating physical or mental disability, the court *may* order maintenance for an indefinite period for as long as the disability continues" (emphasis added)). Similarly, periodic review is discretionary and need not be explicitly provided for in the final decree. *See* former Tex. Fam. Code Ann. § 8.054(b) (providing that "[t]he court *may* order periodic review of its order [for maintenance because of an incapacitating physical or mental disability], *on the request of either party or on its own motion*, to determine whether the disability is continuing" (emphasis added)).

Because of the unusual procedural posture of this case, the divorce decree is one of few parts of the record from the original divorce action that is part of the record on appeal.[21] The divorce decree provided that maintenance payments would continue until the occurrence of the *earliest* of one of the following events:

1.      Total payments of $36,000 [in varying amounts over a period of 24 months];

2.      [D]eath of either [Hopper] or [O'Carolan];

3.      [R]emarriage of Renee Sheree Hopper [O'Carolan]; or

4.      [F]urther orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by Renee Sheree Hopper [O'Carolan].

Hopper contends that because the trial court ordered payments to continue for a period of 24 months or less, not an indefinite period, the order is not subject to the continuation provision of former Section 8.054(b).

---

[21] The docket sheet reflects that findings of fact and conclusions of law were never filed by the trial court, although O'Carolan requested them.

We agree. Nothing in the trial court's order or the record supports the idea that the trial court intended the spousal-maintenance award to be subject to continuation under Section 8.054(b). The trial court awarded maintenance to O'Carolan to be paid for a definite period of less than three years, which means we cannot imply from the duration of the award that it was based on a finding of physical or mental disability under Section 8.051(2)(A). *See* former Tex. Fam. Code Ann. §§ 8.051(2)(A), .054; *see also Crane v. Crane*, 188 S.W.3d 276, 281 (Tex. App.—Fort Worth 2006, pet. denied) (holding that divorce decree's language controls whether movant may file motion to continue maintenance).[22] In addition, the trial court did not explicitly state that the order would be subject to review under Section 8.054 for continuation of maintenance or make specific findings that O'Carolan has an incapacitating physical or mental disability. *See Dunn v. Dunn*, 177 S.W.3d 393, 395-97 (Tex. App.— Houston [1st Dist.] 2005, pet. denied) (reviewing trial court's termination of spousal maintenance in case in which final decree awarded maintenance for six months, but trial court had stated on record and in decree that trial court would review maintenance order "pursuant to section 8.054(b) of the Texas Family Code"); *Carlin v. Carlin*, 92 S.W.3d 902, 904-05 (Tex. App.—Beaumont 2002, no pet.) (determining that ex-wife's motion was request to review continuation of maintenance, not motion to modify maintenance, because final decree

_____

[22] In *Crane*, the appellate court interpreted the divorce decree as impliedly based on a finding of physical or mental disability under Section 8.054(b) because the trial court had awarded maintenance for three-and-a-half years, and maintenance for any reason other than disability is limited to three years under Section 8.054(a). *Crane v. Crane*, 188 S.W.3d 276, 281 (Tex. App.—Fort Worth 2006, pet. denied) (noting that trial court had also expressly noted in order refusing to modify award that "the [ex-wife's] incapacitating physical disability" existed at time of divorce). Thus, the appellate court held that the trial court incorrectly treated the ex-wife's motion for continuation under Section 8.054 as a motion to modify the original award of maintenance under Section 8.057. *Id.*

30

included provision that if she continued to be unable to support herself because of her incapacitating physical disability, maintenance payments would continue). Although we found in *O'Carolan* that the trial court heard evidence about O'Carolan's current and past health problems, we also noted that based on the record from the hearing on the motion for new trial, the court had expressed concern that O'Carolan's medical condition could cause her some problems in managing a lump sum of money from the sale proceeds from the house.[23] 71 S.W.3d at 531 & n.2, 534 n.9. We concluded that the trial court incorrectly treated spousal maintenance as if it were property and attempted to use the maintenance award as a substitute for awarding any interest in the available community property to O'Carolan. *Id.* at 534.

Despite the evidence of O'Carolan's health problems, the trial court made no specific finding that O'Carolan suffered from an incapacitating physical or mental disability. As we observed in *O'Carolan*, both "O'Carolan's health problems *and lack of earning capacity* . . . may have [made her] a proper candidate for spousal maintenance." *Id.* (emphasis added); *see* former Tex. Fam. Code Ann. § 8.051(2)(A), (C). Given the two-year duration of the maintenance award, the trial court's substitution of maintenance for any property award to O'Carolan, and the lack of a specific disability finding or language in the order providing for review or continuation of the maintenance order under Section 8.054(b), we cannot conclude that the trial court's spousal-maintenance order is subject to a motion for continuation. *See Crane*, 188 S.W.3d at 281; *Dunn*, 177 S.W.3d at 395-97; *Carlin*, 92 S.W.3d at 904-05. Because we hold that as a matter of law the

---

[23] The portion of the transcript covering the issue of O'Carolan's medical condition and the trial court's concern about her ability to manage a lump sum of money was admitted into evidence during the bench portion of the trial on remand.

original award is not statutorily eligible for continuation, there are no genuine issues of material fact related to Hopper's res judicata defense, and he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 222.

### C.      Procedural issues related to summary judgment

O'Carolan also contends that the dismissal of her claim was error for procedural reasons. O'Carolan primarily complains that it was not proper for Hopper to seek, or the trial court to grant, summary judgment on a claim that the trial court had previously dismissed with prejudice.[24] O'Carolan, however, both responded to Hopper's summary-judgment argument and failed to make any procedural objections to Hopper's motion in her response to the summary-judgment motion.[25] As a result, she failed to preserve any error resulting from Hopper's attempt to obtain summary

---

[24] O'Carolan also contends that the trial court's dismissal of her claim with prejudice after the June 5 hearing was error because it granted relief not requested by Hopper in his motion to strike, and thus, that judgment should be reversed and remanded. Hopper took the opposite position in his motion to strike, stating that "[b]ecause the Court has now been charged to re-divide the community property, the Court must also render an entirely new order on spousal maintenance." We note, however, that at the hearing on the motion the trial court considered the issue of the effect of our opinion in *O'Carolan* without objection from O'Carolan that dismissal of any claim for current spousal maintenance had not been addressed in Hopper's motion. Thus, the issue was arguably tried by consent. As we noted above, the trial court's striking O'Carolan's pleading without providing her either the opportunity to replead or the procedural protections of the summary-judgment process was error. But the error was cured when O'Carolan received the protections of the summary-judgment process.

[25] As part of her argument on appeal, O'Carolan complains that she was deprived of twenty-one days' notice that the previously dismissed claim had been revived because the trial court denied her motion for rehearing on the motion to strike as moot (because Hopper admitted that he had not pled the issue) on the same day that it granted his motion for summary judgment. But as noted, she responded to Hopper's summary-judgment argument and presented summary-judgment evidence on the issue.

judgment on a claim that had already been dismissed with prejudice.[26] *See* Tex. R. App. P. 33.1(a) (requiring timely and specific objection upon which trial court either ruled or refused to rule).

We conclude that O'Carolan has failed to identify any reversible procedural or substantive errors related to her claim for continuing spousal maintenance. Accordingly, we overrule her second issue.

## III.    Division of community property

In her fourth issue, O'Carolan asserts that the trial court failed to make a just and right division of the community property because it ruled that the property should be valued as of the time of the divorce in 2000. She contends that the trial court (1) should have heard evidence and argument on the property's 2009 value before deciding to value the property as of 2000 and (2) should not have excluded evidence of the 2009 value of the community property. Hopper responds that the trial court did not abuse its discretion by valuing the property as of the date of the divorce in 2000. We will overrule O'Carolan's issue because we conclude that the trial court did not abuse its discretion.

A trial court must make a just and right division of the community estate. Tex. Fam. Code Ann. § 7.001 (West 2006). The division must be equitable, but the trial court does not have

---

[26] O'Carolan further complains that the order granted more relief than requested because Hopper had not sought in his summary-judgment motion reversal of the prior order dismissing the claim. Hopper did, however, point out that the trial court had previously dismissed the claim and that he sought dismissal of the claim via summary judgment in case there was "any objection to whether or not this issue was tried by consent." Again, O'Carolan did not object to Hopper's request below. Accordingly, we conclude that she also failed to preserve error on this argument. *See* Tex. R. App. P. 33.1(a).

33

to divide the community property equally. *O'Carolan*, 71 S.W.3d at 532. The trial court has wide discretion when dividing the property, but there must be some reasonable basis for an unequal division of the property. *Id.* The trial court may consider many factors when exercising its discretion, including the parties' earning capacities, abilities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). We review the trial court's division of property for an abuse of discretion. *Id.* at 700. To constitute an abuse of discretion, the property division must be manifestly unfair. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). We presume on appeal that the trial court correctly exercised its discretion when dividing property in a divorce proceeding, and the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion. *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 836 (Tex. App.—Texarkana 1996, writ denied).

The value of community assets is generally evaluated as of the time of the divorce, and subsequent increases in value are separate property. *Grossnickle*, 935 S.W.2d at 837. At least one court has held that the determination of when to value property when the division occurs at a different time than the divorce "is in fact so specific that it should be left to the discretion of the trial judge to avoid the inequities that could result by making a bright-line rule." *Parker v. Parker*, 897 S.W.2d 918, 932 (Tex. App.—Fort Worth 1995, writ denied) (holding court did not err by valuing land as of date of 1988 divorce instead of date of 1993 property division), *overruled on other grounds by Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41,

34

47 (Tex. 1998).  Despite the trial court's discretion to decide otherwise for equitable purposes, the rule generally followed in Texas is to value the community assets as of the date of divorce. *Grossnickle*, 935 S.W.2d at 837.

The trial court heard pretrial argument on the issue of whether the community property should be valued as of the time of the divorce in 2000 or as of the time of the trial on remand in 2009.  The trial court ruled that the property should be valued as of the time of the divorce in 2000.  Accordingly, the trial court also ruled that "the evidence that goes into the jury in this matter on valuation purposes needs to be limited to things that go to what the value of things were as of the date of the decree."  After the jury made its findings on the value of the community estate, the trial court heard additional evidence relevant to other factors that it could consider in making a just and right division of the community property.  The trial court ultimately valued the community estate at $68,500 and ordered a disproportionate distribution of 55% of the community property to O'Carolan and 45% to Hopper.  After considering the evidence at trial and the jury's valuation of the Dripping Springs property, the court concluded that the net value of the home was $50,000.  The trial court adjusted the allocation based on the evidence of actual possession of the various marital assets at the time of divorce and also credited Hopper for $2,000 in attorneys' fees awarded to him by the trial court on June 15, 2009 in connection with a discovery dispute.  It awarded the Dripping Springs property to Hopper and ordered him to pay O'Carolan $28,875.

On the record before us, we cannot say that the trial court abused its discretion by determining that the community property should be valued as of the date of the divorce.  O'Carolan

35

has failed to adequately explain why the trial court's valuation of the property as of 2000 was manifestly unfair. Although she argues that the community property's value had increased between 2000 and 2009, she has not explained how any alleged increase in value would have resulted in a materially greater award to her after the trial court accounted for Hopper's asserted economic-contribution claims for post-marital mortgage payments and capital improvements and reimbursement claims for post-marital expenses such as property taxes, mortgage insurance, and regular maintenance and repairs. As a result, we cannot conclude that the property division based on the community property's value as of the date of divorce was manifestly unfair. We overrule O'Carolan's fourth issue.

## IV. Retroactive award of real property and all rights in real property to Hopper

In her fifth issue, O'Carolan challenges the trial court's award of the Dripping Springs property and all rights in the property to Hopper, arguing that there was no basis in law for the trial court to make what she characterizes as a "retroactive" (to the year 2000) award of the title and all rights in the real property to Hopper. She contends that she and Hopper were joint owners of the property from the point of remand until the trial court's judgment, and thus, the trial court should have partitioned the property under either the Family Code or the Property Code.[27] *See* Tex. Fam. Code Ann. §§ 9.201, .203 (West 2006) (establishing procedure for division of property not divided or awarded to spouses in divorce decree); Tex. Prop. Code Ann. § 23.001 (West 2000) (establishing

---

[27] O'Carolan raised this issue in her motion for new trial and in her motion to correct and modify the judgment, arguing that as a matter of law, the community real property became jointly owned separate property after the parties' divorce in 2000. She contended that trial court improperly divested her of her separate interest in the property by awarding the real property and her interest in the real property to Hopper on remand. The trial court denied both motions.

that joint owner of real property may compel partition of property among joint owners). Hopper responds that the trial court has the same discretion to make a just and right property division of the community estate upon remand as it does in the original divorce proceeding. We will overrule O'Carolan's fifth issue because we conclude that the trial court acted within its discretion when dividing the property.

While O'Carolan correctly states the law that applies to property that is undivided at the time of the divorce, in this case the original divorce decree disposed of the property, but the decree did not become final as to the property division because of the appeal and later remand by this Court. *See Goetz v. Goetz*, 567 S.W.2d 892, 894 (Tex. Civ. App.—Dallas 1978, no writ). Here, as in *Goetz*, "[o]ur limited remand of the property division issue did not change the essential marital character of the dispute." *Id.* It remained a matter of disposition of the estate of the parties governed by Section 7.001 of the Family Code, not a matter of disposition of undivided property after divorce governed by Section 9.201 of the Family Code or a suit for partition of property governed by Section 23.001 of the Property Code. *See id.* As a result, the trial court properly applied marital-property law instead of the law applying to partition because the property was not undivided in the original divorce decree. *See id.* at 895.

O'Carolan also argues that when the trial court divided the community estate, it improperly divested her of title to the property, citing *Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982). In *Cameron*, the Texas Supreme Court held that the Family Code does not authorize a trial court to divest *separate* property from one spouse and award it to the other spouse as that

37

spouse's separate property. *Id.* at 213-16. O'Carolan acknowledges that the Dripping Springs property was determined to be community property in both the original divorce decree and the final judgment on remand. Thus, the trial court did not divest her of title to her separate property when it divided the property by awarding the property, the debt on the property that existed in 2000, and all equitable claims or interest in the property arising out of Hopper's conduct since 2000 to Hopper and requiring Hopper to pay her for her half of the property's value in 2000. It is well settled that when the trial court determines that community real estate is not subject to partition in kind, it may properly award all of the real property to one party. *See Reardon v. Reardon*, 359 S.W.2d 329, 329-30 (Tex. 1962) (answering certified question and stating that trial court may divest one party of title to community real estate and award title to all community real estate to other party as his or her sole and separate property when community real estate is not subject to partition in kind). In this case, the trial court awarded the Dripping Springs property to Hopper, along with the debt as it existed at the time of the divorce and any equitable claims or equitable interest in the property "arising out of [Hopper's] conduct at any time after May 2000." Hopper was also ordered to pay O'Carolan for 55% of the value of the community estate as it existed at the time of the divorce (less deductions for community property retained by O'Carolan and $2,000 in attorneys' fees that O'Carolan had been ordered to pay as discovery sanctions). Had the trial court made a different determination about when to value the estate, a different determination might have been needed about the award of the debt on the property and any equitable claims or rights arising in the property after the divorce decree. As discussed above, however, the trial court did not abuse its discretion by dividing the community estate based

38

on its value at the time of the divorce. Consequently, O'Carolan has not shown that the trial court abused its discretion by dividing the community property in this way.[28] We overrule her fifth issue.

## V. Award of discovery sanctions

O'Carolan asserts in her sixth issue that the trial court erred by awarding Hopper $2,000 in attorneys' fees as discovery sanctions, which it credited against the payment it ordered Hopper to make to O'Carolan as part of the property division. O'Carolan asserts that there is no basis for the award of sanctions, there is no evidence to support the reasonableness of the attorneys' fees, and the award is excessive because O'Carolan is indigent and her counsel is working on a pro bono basis. We will overrule this issue because we conclude that the trial court acted within its discretion when awarding sanctions.

Hopper had filed a motion to compel discovery and for sanctions on June 1, 2009, alleging that O'Carolan's counsel had failed to serve discovery responses to interrogatories, requests for production, and requests for disclosure that Hopper had served on O'Carolan on April 22, 2009. The trial court considered the motion at two different hearings, one on June 5, 2009, and one on

---

[28] O'Carolan also complains in her third issue on appeal about the trial court's granting Hopper's summary-judgment motion on her third-party fraud claim. We do not reach this issue, however, because it is moot. In her fraud claim, O'Carolan alleged that Hopper had illegally obtained two home-equity loans on the Dripping Springs property after the 2000 divorce decree while the property was still subject to remand. We have affirmed on appeal the propriety of the trial court's confirmation of "[a]ny and all equitable claims or equitable interest in the real property awarded to [Hopper] above, arising out of [Hopper's] conduct at any time after May 1, 2000" as Hopper's separate property. This conclusion renders O'Carolan's fraud claim moot on appeal. *See Zipp v. Wuemling*, 218 S.W.3d 71, 73 (Tex. 2007) (noting that appeal is moot when court's action on merits of issue cannot affect parties' rights). Thus, we do not reach the issue of whether the trial court properly granted Hopper's pretrial motion for partial summary judgment on the fraud claim.

June 15, 2009.[29]  At the first hearing, Judge Cooper decided to defer to the trial court the issue of what evidence could be presented or would be excluded, in part because O'Carolan's counsel had not yet received the certified-mail return receipt.  At that time, trial was set for June 15, 2009, so the motion was reconsidered as a pretrial matter that day.

By the time of the second hearing, Hopper's counsel had received the discovery responses but re-urged the motion, orally asserting that:  (1) O'Carolan's responses to the interrogatories were inadequate because she had objected to all of them because they went over the 25-interrogatory limit, but some of the interrogatories concerned the new third-party claims asserted by O'Carolan; (2) her responses to the requests for disclosure were inadequate because they referred to her pleadings, and the pleadings did not adequately set forth her legal theories; and (3) Hopper's counsel never received the documents produced in the original divorce trial from Hopper's trial counsel.  Hopper's counsel further argued that even though she had received the responses, they were not timely served because they had not been properly addressed (her suite number was missing from the address).  Hopper's counsel asserted that because the discovery responses were late and inadequate, O'Carolan should not be allowed to present evidence on any of her third-party claims (for conspiracy, conversion, and intentional misrepresentation) at trial, those claims should be stricken, and Hopper's attorneys' fees should be paid by O'Carolan.

O'Carolan's counsel responded at both hearings that there was outstanding discovery from the original divorce trial and that she had been unaware that Hopper's original trial counsel

---

[29]  The background information provided in this section is taken from the arguments made by both parties' counsel at the two hearings.  None of the discovery requests or responses are part of the appellate record.

had not provided either the discovery requests or any of the documents produced in discovery to Hopper's new counsel for the trial on remand until the day before the first hearing on the motion to compel. Thus, O'Carolan's counsel explained, she objected to the interrogatories being served by Hopper's current trial counsel as over the 25-interrogatory limit and had not served any new interrogatories on Hopper. She also asserted at the second hearing that the omission of Hopper's counsel's suite number from the address was inadvertent.

After the second hearing, the trial court ordered O'Carolan to supplement her discovery responses by July 6, 2009, "including but not limited to answering all of [Hopper's] interrogatories (including but not limited to those interrogatories served on April 22, 2009)," and ordered her to pay Hopper $2,000 in attorneys' fees, reserving until final trial on the merits the determination of the method of payment. The trial court denied Hopper's request to exclude all evidence from trial that had not been adequately disclosed through discovery as of June 15, 2009. The trial court continued the trial setting and ordered the parties to appear for a status hearing on July 20, 2009, at which time a trial date would be set.

We review a trial court's imposition of discovery sanctions to determine whether the court abused its discretion and whether its choice of sanctions was "just." *See Cire v. Cummings*, 134 S.W.3d 835, 839-40 (Tex. 2004) (noting sanctions orders are reviewed for abuse of discretion); *see also TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (citing Texas Rule of Civil Procedure 215(b), which allows trial court to make such orders as are "just" when party fails to comply with proper discovery requests). To determine whether an imposition of sanctions is just, we consider two components. *Cire*, 134 S.W.3d at 839. We first examine

whether there is a relationship between the offensive conduct and the sanction imposed. Second, we determine whether the sanctions are excessive for the offense, i.e., whether the trial court considered lesser sanctions. *Id.*

In this case, the trial court ordered O'Carolan to answer all of Hopper's new interrogatories and pay $2,000 in attorneys' fees, leaving until trial the determination of the method of payment. The trial court also continued the trial date. The trial court did not strike O'Carolan's pleadings or prohibit O'Carolan from introducing any evidence related to her third-party claims, as Hopper's counsel had requested. By ordering O'Carolan's counsel to answer all the discovery and also continuing the trial date, the trial court allowed Hopper to have discovery on O'Carolan's new claims without imposing a so-called "death penalty" sanction on O'Carolan. None of the discovery requests or responses were admitted into evidence, but it is apparent from the reporter's record that the trial court determined that O'Carolan's answers to the interrogatories were inadequate, given her introduction of new claims into the case. Although the trial court did not set forth in its order the reason that it was awarding attorneys' fees to Hopper, there was discussion at the hearings about the time expended by Hopper's attorneys to prepare for both hearings.[30] O'Carolan's attorney argued to the trial court that monetary sanctions were inappropriate because she was representing O'Carolan on a pro bono basis, but the trial court indicated on the record that O'Carolan's status as a pro bono

---

[30] In addition, Hopper's attorneys submitted invoices as an exhibit at trial showing all of their time spent on this case. Those invoices show that Hopper incurred at least $2,000 in attorneys' fees related to his attorneys' preparation for and attendance at the two hearings. Thus, to the extent that it may have been error for the trial court to award fees at the June 15, 2009 hearing without evidence of those fees, the submission of the invoices at trial (and before payment by O'Carolan) cured any error.

42

client was the reason that it postponed determination of the method of payment until trial. Taking all of these circumstances into account, we conclude that the trial court did not abuse its discretion by requiring O'Carolan to supplement her discovery responses and pay $2,000 in attorneys' fees. We overrule O'Carolan's sixth issue.

## CONCLUSION

Having sustained O'Carolan's first issue, we reverse the trial court's order denying O'Carolan's claim for enforcement of the spousal maintenance awarded in the original divorce decree and remand that claim to the trial court for further proceedings consistent with this opinion. We affirm the trial court's order granting Hopper's summary-judgment motion and dismissing O'Carolan's claim for continuation of spousal maintenance. O'Carolan's third-party fraud claim is moot, and thus, we did not reach her issue challenging the trial court's grant of Hopper's motion for partial summary judgment on that claim. We affirm the trial court's order granting Hopper's motion to compel and awarding discovery sanctions. We affirm the trial court's final judgment on O'Carolan's remanded property division claim in all respects, including but not limited to the award to Hopper of $2,000 in attorneys' fees (which the court deducted from the amount owed by Hopper to O'Carolan), the payment owed by Hopper to O'Carolan of $28,875, and the award of the Dripping Springs property to Hopper, as well as the debt existing as of the time of the divorce and any equitable claims in the property arising as a result of Hopper's conduct after May 2000.

43

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed:   September 27, 2013