

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-25-00057-CV

IN THE MATTER OF THE MARRIAGE OF BRANDON WATERS AND STACEY
WATERS AND IN THE INTEREST OF E.W., L.W., L.W., AND F.W., CHILDREN

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV22-1343, Honorable Graham Quisenberry, Presiding

November 18, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Stacey Waters appeals from the final divorce decree entered by the trial court. She contends the trial court's rulings were erroneous. We affirm.

### Background

Brandon and Stacey married in 1995 and had five children over the course of their marriage. Stacey homeschooled them, while Brandon owned and operated a motor

---

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

vehicle repair shop. Brandon filed for divorce in 2022 following several years of separation.

Stacey made allegations of a sexual nature against Brandon. There were also accusations of his sexual misconduct with their older daughter, possible physical misconduct toward another child, assertion of Brandon's preoccupation with adolescent females, and evidence of Brandon's addiction to pornography. The record also contains evidence showing that Stacey suffered from mental health conditions and that at least some of her allegations were fabricated. There was also evidence of emotional abuse and trauma to the children inflicted by Stacey and of her attempts to alienate the children against Brandon.

The court held a final hearing during the summer of 2024. The trial court signed the final decree on December 13, 2024. Thereafter, it executed findings of fact and conclusions of law. Through one such finding the trial court said: "[m]ost of Stacey's testimony was not credible."

### *Conservatorship of Children*

Through her first and third issues, Stacey contends the trial court erred when it awarded to Brandon sole conservatorship of the children and found her a physical danger to her children. We overrule the issues.

The best interest of the child "shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *In re Marriage of Bentrott*, No. 07-23-00363-CV, 2024 Tex. App. LEXIS 7320, at *18-19 (Tex. App.—Amarillo Oct. 11, 2024, no pet.) (mem. op.). We review a "best interests" determination for abused discretion, and do so with an eye on the factors announced in

2

*Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). *Id.* Furthermore, there is no abused discretion "as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Id.*

The trial court designated Brandon the sole managing conservator of the children. Stacey argues the trial court erroneously relied on a polygraph taken by Brandon. To the extent she posits that the polygraph was inadmissible, her complaint was not preserved for review, for she failed to object to its admission.[2] *Gardner v. State*, 02-09-00360-CR, 2010 Tex. App. LEXIS 8991, at *7 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (stating one must assert a proper and timely objection the admission of polygraph results to preserve error for review). Having waived her complaint to that evidence, we cannot fault the trial court for considering the polygraph evidence.

Moreover, the court also heard evidence about 1) the children initially living with Stacey but later coming to live with Brandon's parents and, ultimately Brandon, 2) Brandon often seeing his children when they lived elsewhere, 3) Stacey coaching the children, 4) Stacey uttering delusions to them resulting in emotional damage, 5) Stacey endeavoring to fracture their relationship with their father, 6) Stacey isolating the children, which caused emotional damages, 7) Stacey uttering unsubstantiated allegations against Brandon, 8) Stacey hiding the children from Brandon on occasion, 9) at least one child exhibiting bruising or welts reminiscent of being struck by a belt or stick while in Stacey's

---

[2] We note also that aside from lodging hearsay objections during Brandon's testimony, Stacey did not otherwise object to the admission of the polygraph evidence. Indeed, the parties stipulated to the Custody Evaluation Report of Findings and Conclusions that referenced the polygraph examination. She has not preserved the complaint concerning the polygraph examination results. TEX. R. APP. P. 33.1.

care, 10) various witnesses, including therapists, testifying that the children's behavior and social skills changed in a positive manner upon leaving the supervision of Stacey and coming to live with their father, 11) Stacey's mental health, which included signs of depression, anxiety disorder, trichotillomania, and a hoarding disorder, 12) Stacey's mood dysregulation and thought distortion, and 13) the fear of Dr. Crystal Baird, who conducted a custody evaluation, in permitting Stacey to have physical access to the children, even if supervised. Indeed, Baird concluded, among other things, that "[t]he mother presents a significant danger to the children emotionally and physically. The mother has absconded with the children and hid them from the court. The mother has engaged in emotional abuse for years, which has been documented in therapeutic notes." So too did she recommend that 1) "[Brandon] . . . should be granted sole managing conservatorship with the mother having possessory conservatorship" and 2) "[t]he mother should only be allowed supervised phone access until she provides all medical and mental health documents to this evaluator and the amicus attorney."

On the other hand, the court also heard testimony indicating Brandon suffered mental or emotional conditions and once had an addiction to pornography. Nevertheless, Brandon maintained both a stable home and employment. And, while living with their father, the children seemed to improve. Nor did the custody evaluator have concerns about father's ability to parent. And, though the children may have expressed a desire to live with their mother, their amicus attorney recommended that the youngest two boys remain with their father because of concern for their progress if returned to mother.[3]

---

[3] The oldest of the three children subject to this suit turned 18 in late 2024. The record indicates her plan was to move out of the family home.

4

No doubt, the evidence was mixed. Yet, the trial court, as factfinder, was in the best position to evaluate witness demeanor and credibility. And, in exercising that authority as factfinder, it had evidence upon which to conclude that the best interests of the children favored the selection of Brandon as sole managing conservator. *See, e.g., In re M.L.P.,* No. 13-20-00547-CV, 2022 Tex. App. LEXIS 251, at *29 (Tex. App.—Corpus Christi Jan. 13, 2022, no pet.) (mem. op.) (finding the evidence established that father's parental abilities were slightly superior to mother's and that father's residence was more stable and appropriate for the children). So too did the evidence described above support the finding that Stacey posed both a physical and emotional danger to the children.

### *Limitations on Possession*

By her second issue, Stacey contends the trial court erred in limiting her access to two supervised phone calls twice a month. She argues that when Brandon was suspected of sexually assaulting his oldest daughter, his visitation was limited only to supervised in-person visitation. Stacey claims there was no justification to limit her access more severely than Brandon's. We overrule the issue.

Again, the best interests of the children control. TEX. FAM. CODE § 153.002; *In re J.J.R.S.,* 627 S.W.3d 211, 218 (Tex. 2021). Furthermore, there is a rebuttable presumption that the standard possession order provides the reasonable minimum level of possession and access for a parent named possessory conservator and is in the best interest of the child. *In re J.J.R.S.,* 627 S.W.3d at 218 (citing TEX. FAM. CODE § 153.252); *see also* TEX. FAM. CODE § 153.131(b) (rebuttable presumption that the appointment of parents of child as joint managing conservators is in best interest of child). When determining whether to deviate from the standard possession order, a court may consider

"(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." *In re J.J.R.S.*, 627 S.W.3d at 218-19; *see also* TEX. FAM. CODE § 153.004 (addressing conservatorship with history of domestic violence or sexual abuse). Nor may "the terms of an order that deviates from the standard possession order . . . exceed those that are required to protect the best interest of the child.'" *Id.* (citing TEX. FAM. CODE § 153.193).

Regarding the accusations of sexual abuse, no evidence other than Stacey's testimony supported them. Again, the trial court found most of what she said non-credible. Furthermore, the polygraph findings to which Stacey did not object tended to contradict the accusations of abuse. Nor did those allegations result in criminal prosecutions.

And, as discussed in our analysis of Stacey's first and third issues, there was a plethora of evidence of emotional abuse and developmental trauma suffered by the children at the hands of Stacey. The limitations imposed were intended to prevent further abuse and trauma and fell within its discretion to order. Indeed, in its findings of fact, the trial court explicitly stated, "[t]he periods of possession should vary from the Standard Possession Order and Stacey's access and possession of the children should be drastically limited."

While Stacey repeatedly compares her alleged risk to that of Brandon's, that is not the inquiry. The inquiry was what risk Stacey posed to the children and how best to further the children's best interests. And the record is replete with evidence of just how damaging Stacey's emotional abuse and developmental trauma were to her children. It also

6

contained evidence of Stacy's mental state and physical injury inflicted on at least one child. *See In re P.A.C.*, 498 S.W.3d 210, 218 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting mental state among other factors to consider). So too do we harken back to the evidence of her attempts to alienate the children from Brandon and restrict his access to them. *Trevino v. O'Quinn*, No. 03-18-00197-CV, 2019 Tex. App. LEXIS 7970, at *15-16 (Tex. App.—Austin Aug. 30, 2019, no pet.) (mem. op.) (noting factors that courts have cited in support of their decisions to limit a parent's possession and access to her child to supervised visits as including a parent's inability to follow court orders, attempts to alienate the child from the other parent, and actions that improperly deny the other parent contact with the child); *accord In re Marriage of Fraker*, No. 13-23-00340-CV, 2025 Tex. App. LEXIS 5343, at *27 (Tex. App.—Corpus Christi July 24, 2025, no pet.) (mem. op.) (stating that "[p]oisoning a child's mind against a parent is not in the child's best interest"). Nor can we ignore 1) the evaluator's recommendation to restrict mother's visitation to phone calls; 2) the unquestioned finding that "[w]hen with Stacey, the children slept in the same bed and were unable to function as individuals"; 3) the unquestioned finding that "[t]he children 'parroted' their mother and were socially behind"; 4) the unquestioned finding that "[t]he children had no social life and were reserved in demeanor . . ." during the time they were in Stacey's possession; 5) the unquestioned finding that "Stacey filed unfounded, false reports with CPS against Brandon"; 6) the unquestioned finding that "Stacey's conduct significantly harmed the children's relationship with Brandon"; 7) the unquestioned finding that "Stacey committed parental alienation" against Brandon; and 8) the unquestioned finding that "Dr. Baird testified that she has concerns about the mother having physical access to the children even if

7

supervised because of the mental illness of Stacey and the underlying issues with her." Given the foregoing, we cannot say the trial court's decision heeding the evaluator's recommendation restricting access to supervised phone calls was arbitrary, capricious, or otherwise a deviation from controlling principles and authority. *See In re Walters*, 39 S.W.3d 280, 286 n.2 (Tex. App.—Texarkana 2001, no pet.) (stating that "a severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child").

### *Just and Right Division of Marital Estate*

Stacey lastly argues the trial court abused its discretion in dividing the marital estate as it did. We overrule the issue.

A trial court is charged with ordering a division of the community property estate "in a manner that the court deems just and right, having due regard for the rights of each party." *In re Marriage of Luna*, No. 07-16-00065-CV, 2016 Tex. App. LEXIS 12432, at *4-5 (Tex. App.—Amarillo, Nov. 18, 2016, no pet.) (mem. op.) (citing TEX. FAM. CODE § 7.001; *Hrncirik v. Hrncirik*, No. 07-15-00001-CV, 2016 Tex. App. LEXIS 9661, at *6 (Tex. App.—Amarillo Aug. 30, 2016, no pet.) (mem. op)). The application of this statutory standard means that the trial court does not have to divide the community estate equally, so long as the division is equitable. *In re Marriage of Luna*, 2016 Tex. App. LEXIS 12342, at *4 (citing *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.) (op. on reh'g.)). Because the trial court has wide discretion in dividing the community estate, we again review its decision for abused discretion. *Id.* And, "a party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as

to constitute an abuse of discretion." *Quijano v. Amaya*, No. 13-16-00485-CV, 2018 Tex. App. LEXIS 2762, at *7 (Tex. App.—Corpus Christi Apr. 19, no pet.) (mem. op.).

Stacey framed her issue around her unsupported allegation that Brandon hid cash, and without evidence of the amount he hid, the trial court was unable to make a just division of the estate. Yet, again, the trial court found most of her testimony unbelievable. Thus, we cannot simply accept her contention about hidden funds in assessing the legitimacy of the trial court's division.

Next, the community estate at issue was valued at around $880,000. Brandon received approximately $463,000, while Stacey garnered $424,000 of the marital estate. The net variance between the two awards approximated $39,000, or about 4.4%. To that we note the unquestioned findings that 1) "Stacey made false police reports and CPS complaints which increased costs to Brandon"; 2) "Stacey made false allegations about Brandon which caused unnecessary and expensive testing"; 3) "Brandon also paid nearly all litigation and professional costs, some of which was caused by false allegations made by Stacey"; 4) "Brandon paid Stacey $1,200/week until about July 2023 and $2,500/month beginning November 2023"; 5) he "also paid $1,157/month for health insurance for the children and covered medical expenses himself." So given these unchallenged findings and the totality of record evidence, we cannot find Stacey carried her burden to prove the division was so unjust and unfair as to constitute an abuse of discretion.

Having overruled each issue, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

9