# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00115-CV

---

**Yuqian Gan, Appellant**

**v.**

**Arnoldus Mathijssen, Appellee**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-22-002753,
### THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Yuqian Gan appeals the district court's divorce decree dissolving her marriage with appellee Arnoldus Mathijssen. In two issues on appeal, Gan asserts that the district court abused its discretion in: (1) setting the amount of child support owed by Mathijssen; and (2) dividing the community estate. We will affirm the decree on the division of property but reverse and render on the amount of child support.

## BACKGROUND

Gan and Mathijssen married in 2019 in the Netherlands, Mathijssen's home country. Beginning in 2020, the couple lived together in a condo in Austin that had been purchased in 2016 for Gan by her parents. Also in 2020, Mathijssen accepted a professorship at the University of Pennsylvania and worked remotely until 2022, when he moved to Philadelphia.

Gan remained in Texas, eventually accepting a job in the Houston area as a geologist in the energy industry. During their marriage, Gan and Mathijssen had one child, "Evan," who was born in 2021.[1]

In 2022, Gan filed a petition for divorce and Mathijssen filed a counterpetition for divorce, both alleging that the marriage had become insupportable. Mathijssen also claimed that Gan wasted community assets on her separate properties, specifically her condo in Austin and a house in Katy that her parents had also purchased for her. Following a preliminary hearing, the district court issued temporary orders, including that Mathijssen pay child support to Gan in the amount of $1,378.48 per month, which the parties agreed was consistent with statutory child-support guidelines. *See* Tex. Fam. Code § 154.121 et. seq. The parties later entered into a partial mediated settlement agreement (the Partial MSA), which addressed issues of conservatorship, possession, and access to Evan, as well as "guideline child support per the temporary orders," and reserved the property division and other issues involving Evan for the final hearing.

In his proposed disposition of issues submitted before trial, Mathijssen asked to be awarded 50% of all community property that Gan had allegedly taken from their joint account when they separated, 50% of any rental income derived from Gan's properties in Austin and Katy, and 50% of a 2021 Philadelphia city tax refund held in trust that he had received from living in Austin in 2021.

In Gan's proposed disposition of issues, she asked that the court follow the Partial MSA regarding conservatorship, possession, and guideline child support. She also asked the court to order Mathijssen to pay retroactive child support and medical support, to confirm her

---

[1] For the child's privacy, we refer to him by an alias. *See* Tex. R. App. P. 9.9(a)(3).

separate properties, to reimburse the community estate funds that she claimed had been wasted by Mathijssen, and to divide the 2021 Philadelphia tax refund.

The case proceeded to a one-day bench trial, at which Mathijssen and Gan testified. Mathijssen testified that he "was very surprised when Ms. Gan first filed for divorce" and "didn't see it coming at all." Since then, he had been "completely overwhelmed by a complete waste of money" by Gan and "isolation of myself from family and from my son." He believed that Gan was at fault for the divorce and blamed Gan's mother for the disintegration of their marriage. Mathijssen recounted how Gan had "invited her mother to come live with us just after our baby was born and she didn't tell me about this until she was already on her way . . . and initially that was awkward but then it grew worse and worse." According to Mathijssen, Gan's mother "demanded things in the house and practically took control of our household until the day that I got kicked out of the house myself and I had to sleep in a hotel, and I think both me and my wife were surprised by that." Mathijssen explained that Gan's mother, who owned the condo, had initially told both him and Gan that they were no longer welcome there, but that she had later allowed Gan to return. Mathijssen also described a disagreement that he had with Gan about Gan paying her mother a $2,000 per month salary for helping to take care of Evan.

Mathijssen recounted that when he and Gan separated, she "emptied" their joint checking account without notifying him. He explained that at the beginning of May 2022, the account had a balance of about $33,000 but that "[t]hroughout the month that balance started dropping lower and lower because [Gan] was paying off credit cards and making transfers," "initially slowly but then it accelerated, and then on the 27th of May '22 that account was completely empty." Mathijssen sought reimbursement from Gan for the money that she had transferred from their checking and other joint accounts into her separate accounts

3

(approximately $27,588), transferred directly to her mother (approximately $8,621), and used to pay off her credit cards (approximately $16,975). Mathijssen also testified that he had transferred approximately $17,700 from their joint accounts and placed that money into a separate bank account "for safekeeping," where it remained at the time of trial. Mathijssen did not believe that this amount should be divided equally between him and Gan because "she took more than half already, and so this is what was left that I rescued and kept apart for safekeeping, so this is, I would say, a fraction of my fair share." Mathijssen added that he had made an effort to preserve community funds following the separation, but he did not believe that Gan had done the same. Bank statements and credit-card statements showing Gan's spending following the separation were admitted into evidence.

Mathijssen further testified that he currently lives in Philadelphia and that once a month, he flies from Philadelphia to Katy, where Gan lives, to visit Evan, per the terms of the Partial MSA. The visits cost him approximately $1,000 every month, with airfare costing approximately $400, a rental car approximately $300, and lodging and food for the trip approximately "a few hundred dollars." Mathijssen also recounted that he had a three-day visit scheduled with Evan during Christmas 2022, during which Gan did not allow him to see Evan for one day of the visit and for part of a second day because in her view, the weather was too cold. Gan acknowledged in her testimony that she refused to let Mathijssen see Evan during a part of Mathijssen's Christmas 2022 visit due to cold weather.

Gan also testified that in May 2022, she moved "half of [the] money from all joint accounts" into her separate accounts. She denied that she took out any more money than that, stating that she removed "[e]xactly 50 percent." Gan acknowledged that following the separation, she took money from the joint accounts to pay off her credit cards and to pay her

4

mother for helping her with Evan, although she did not know "the exact amount" of money that she took. Gan explained that a large portion of the credit card payments were for her attorney's fees and a company trip that she took in May 2022. Gan further testified that she had received tens of thousands of dollars from her parents in September and November 2022, although she invoked her Fifth Amendment right not to testify when asked to provide details about those transfers. Gan also stated that she owned rental property in Katy and that she had a premarital agreement with Mathijssen to treat the income from that property as her separate property. However, no such agreement was admitted into evidence.

At the conclusion of the hearing, the district court granted the divorce and adopted the provisions of the Partial MSA as to conservatorship, possession, and access to Evan. The district court took the amount of child support under advisement, finding that the Partial MSA was "clear as mud about child support." The court added, "I do think I can consider the cost of the child's travel—of Mr. Mathijssen's travel to see the child in setting child support and I will do so. I don't know what that amount will be right now."

The court also took the property division under advisement but stated that it faulted Gan for her excessive post-separation spending:

> I do find that Ms. Gan violated her fiduciary duties to Mr. Mathijssen by the way she spent money. It's not lost on me. That was easy to figure out. And I do find that she spent a whole bunch of money—I look at those credit cards and I'll look at it, she spent a bunch of money she shouldn't have. I'm not sure it constitutes a waste claim. I'm not sure that it's technically reimbursement, but I can sure look at it and decide that maybe it shouldn't be a 50/50 division because you spent a lot more money than you should have.

The court added,

I do think however when there is not an agreement, it is unreasonable to say you're gonna have a parent come from another country and pay them a large amount of money to keep their grandchild. It seems like a way to just transfer money out of the community estate and I'm going to consider that when I make a division from the community estate.

The district court later issued a letter to the parties stating its rulings on the remaining issues, including the following:

Effective September 1, 2023, Mr. Mathijssen's child support obligation shall be decreased to $750.00 per month. I find this reduction from guideline child support is warranted considering the expenses Mr. Mathijssen incurs to exercise his possession of [Evan].

I find that Ms. Gan's financial actions post separation were unwarranted and unfair to Mr. Mathijssen and caused this divorce to be much more difficult and expensive than necessary. As such, to reach a just and right division of the community estate, Mr. Mathijssen is awarded judgment in the amount of $30,000 against Ms. Gan.

The district court also denied all of Gan's reimbursement claims and awarded Mathijssen 100% of the Philadelphia tax refund. The district court incorporated these rulings into its final divorce decree. The decree awarded each party all the property, assets, and accounts in their own names and in their possession and ordered that each party would be responsible for all debts and liabilities in their own names.

On Gan's request, the district court filed findings of fact and conclusions of law, including the following:

### Child Support

The Court finds that on November 28, 2022, the parties attended a mediation which resulted in a Partial Mediated Settlement Agreement filed with the Court

6

on December 8, 2022 ("the Partial MSA"). In the Partial MSA, the parties agreed that the provisions of the Partial MSA were "intended to be incorporated into a final order." The parties further agreed, in the Partial MSA, as follows with respect to child support: "Current Child Support: guideline support per the temporary order."

The Court finds that Arnoldus Mathijssen, in his live pleading at the time of trial, specifically, his First Amended Counter-Petition for Divorce filed on August 10, 2023, pled for and requested that the Court, upon final hearing, "order payments for the support of the child and for medical and dental support for the child in an amount and in a manner specified by the Court, taking into account the costs and expenses for travel and lodging that will be incurred in order for Counter-Petitioner [Amoldus Mathijssen] to exercise his periods of possession and access to the child."

The Court finds that pursuant to Texas Family Code 153.251, it is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child.

The Court finds pursuant to Texas Family Code Section 154.123, it may consider, and did consider, several factors in ordering periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines, including but not limited to ". . . the cost of travel in order to exercise possession of and access to the child," and "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the child."

The Court finds that pursuant to Texas Family Code 154.124, it is not bound by the parties' agreement concerning child support if the court finds that the agreed amount is not in the best interest of the child.

The Court finds that Arnoldus Mathijssen has incurred, and will continue to incur significant costs and expenses for travel and lodging in order for him to exercise his periods of possession of the child. The Court finds that the child's contact with Arnoldus Mathijssen will decrease significantly if child support is ordered without taking the factors set forth in Texas Family Code 154.123 into consideration.

7

The Court finds that a decrease in the child's contact with Arnoldus Mathijssen is not in the Child's best interest and is contrary to the stated policy of this state.

The Court finds that portion of the parties' Partial MSA regarding the payment of child support is not in the best interest of the child.

The Court finds that the amount of $750.00 per month in child support to be paid by Arnoldus Mathijssen to Petitioner Yuqian Gan . . . is in the best interest of the child based on the evidence presented at trial, is consistent with "guideline support" as enumerated in the Texas Family Code, taking into consideration the factors set forth in Section 154.123 of the Texas Family Code, and promotes the stated policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child.

***Awards of Community Property and Assignments of Joint Debts and Liabilities***

The Court finds that Yuqian Gan's financial actions, post-separation, were unwarranted and unfair to Mr. Mathijssen.

The Court finds that Yuqian Gan's financial actions, post-separation, caused this divorce case to be much more difficult and expensive than necessary.

The Court finds that Yuqian Gan's financial actions, post-separation, warrant an award of and judgment in favor of Arnoldus Mathijssen and against Yuqian Gan in the amount of $30,000.00, in addition to the other awards and division of community property, assets and accounts, and the assignment and allocations of community/joint debts and liabilities of the parties as contained and reflected in the Court's Final Decree of Divorce.

The Court finds that the judgment in favor of Arnoldus Mathijssen and against Yuqian Gan in the amount of $30,000.00, plus the other awards and division of community property, assets and accounts, including the award of the 100% of Arnoldus Mathijssen's Philadelphia City tax refund in the amount of $4,933.22 to Arnoldus Mathijssen, and the assignments and allocations of the joint/community debts and liabilities of the parties as contained and reflected in the Court's Final Decree of Divorce is fair and equitable, and constitutes a just and right division of the community estate.

8

Gan filed a motion and an amended motion to modify, correct, or reform the judgment, which was overruled by operation of law.  This appeal followed.

## STANDARD OF REVIEW

We review the district court's rulings in this divorce proceeding for abuse of discretion.  *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Kazmi v. Kazmi*, 693 S.W.3d 556, 565-66 (Tex. App.—Austin 2023, pet. denied); *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 383 (Tex. App.—Dallas 2013, no pet.).  "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable."  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

Under this standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion.  *See Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).  "In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion."  *Coburn*, 433 S.W.3d at 823.  "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the court's decision."  *Id.*

## DISCUSSION

**Child support**

In her first issue, Gan asserts that the district court abused its discretion in setting Mathijssen's child-support obligation at $750 per month. According to Gan, there was insufficient evidence to support the district court's finding that the reduction from the standard guidelines was in Evan's best interest, and the district court should have kept support at the amount of $1,378.48 per month, as it was in the Partial MSA. Gan also asserts that by disregarding the support amount in the Partial MSA without a specific request to do so by the parties, the district court failed to observe "the adversarial legal system."

We agree with Gan that in this case, the district court was not permitted to deviate from the Partial MSA on child support. "Under the Texas Family Code, a party to a suit for dissolution of marriage or a suit affecting the parent–child relationship is entitled to judgment on a mediated settlement agreement (MSA) if the agreement satisfies the statute's enumerated requirements." *Highsmith v. Highsmith*, 587 S.W.3d 771, 773 (Tex. 2019) (citing Tex. Fam. Code §§ 6.602(c) (suit for divorce), 153.0071(d) (suit affecting parent-child relationship)). These requirements are that the MSA: "(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation"; "(2) is signed by each party to the agreement"; and "(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed." Tex. Fam. Code §§ 6.602(b), 153.0071(d). If the MSA meets these requirements, "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* §§ 6.602(c), 153.0071(e).

The Texas Supreme Court has characterized this as a "mandate" requiring the trial court to enter judgment on a statutorily compliant MSA, unless the "narrow exception" of Section 153.0071(e-1) applies. *In re Lee*, 411 S.W.3d 445, 452 (Tex. 2013). Section 153.0071(e-1) provides that a court may decline to enter a judgment on an MSA if the court finds:

(1) that:

(A) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; or

(B) the agreement would permit a person who is subject to registration under Chapter 62, Code of Criminal Procedure, on the basis of an offense committed by the person when the person was 17 years of age or older or who otherwise has a history or pattern of past or present physical or sexual abuse directed against any person to:

(i) reside in the same household as the child; or

(ii) otherwise have unsupervised access to the child; *and*

(2) that the agreement is not in the child's best interest.

Tex. Fam. Code § 153.0071(e-1) (emphasis added). "By its plain language, section 153.0071 authorizes a court to refuse to enter judgment on a statutorily compliant MSA on best interest grounds only when the court also finds" that the other requirements of Section 153.0071(e-1) have been satisfied. *Lee*, 411 S.W.3d at 453. "Stated another way, '[t]he statute does not authorize the trial court to substitute its judgment for the mediated settlement agreement entered by the parties unless the requirements of subsection 153.0071(e-1) are met.'" *Id.* (quoting

*Barina v. Barina*, No. 03–08–00341–CV, 2008 WL 4951224, at *4 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.)). The statute "encourages parents to peaceably resolve their child-related disputes through mediation by foreclosing a broad best interest inquiry with respect to entry of judgment on properly executed MSAs," thereby "ensuring that the time and money spent on mediation will not have been wasted and that the benefits of successful mediation will be realized." *Id.* at 455. Accordingly, when an MSA meets the statutory requirements for a binding agreement, a trial court abuses its discretion when it declines to enter judgment on the MSA unless the "narrow exception" found in Section 153.0071(e-1) applies. *Id.* at 461.

Here, the Partial MSA satisfied the statutory requirements for a binding agreement. It was signed by Gan, Mathijssen, and their respective attorneys, and it included a statement in boldfaced capital letters that "**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION**." The Partial MSA also contained the following paragraph, which further emphasized the binding nature of the agreement:

> **PURSUANT TO SECTIONS 153.0071 AND/OR 6.602 OF THE TEXAS FAMILY CODE, THIS MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS SIGNED BY BOTH PARTIES AND THEIR ATTORNEYS, WHO WERE PRESENT AT THE TIME THAT THEIR RESPECTIVE CLIENTS SIGNED THIS MEDIATED SETTLEMENT AGREEMENT. THE PARTIES AND THEIR ATTORNEYS RECOGNIZE THAT THIS PROVISION MEANS THAT EITHER PARTY IS ENTITLED TO JUDGMENT ON THIS MEDIATED SETTLEMENT AGREEMENT AS A MATTER OF LAW.**

The Partial MSA specified that it applied to:

> **Conservatorship, Possession, Child Support and Other Issues.** The terms and provisions for the agreed parenting plan shall be as set forth on "Exhibit A" and those terms shall be included in an Agreed Final Decree of Divorce. The parties stipulate that such terms are in the best interest of the child. The parties agree that

this will settle all child related issues except as specifically reserved on Exhibit A.

Exhibit A, which was attached to the agreement, did not reserve the amount of child support for determination later. Instead, it expressly provided that "current child support" would be "guideline child support per the current temporary order," which in turn specified that Mathijssen's child support obligation would be $1,378.48 per month.

On this record, we conclude that the Partial MSA was a binding agreement on the amount of child support, and the district court was therefore required to enter judgment on that amount absent findings that the requirements of Section 153.0071(e-1) were also satisfied. Although the district court made the required "best interest" finding, it did not find that the additional requirements of Section 153.0071(e-1), relating to either family violence or sex-offender status, were satisfied, and there is no evidence in the record to support any such findings. Consequently, we must conclude that the district court abused its discretion in reducing the amount of child support from $1,378.48 per month to $750.00 per month. *See Lee*, 411 S.W.3d at 461.

We sustain Gan's first issue.

**Property division**

In her second issue, Gan asserts that the district court abused its discretion in dividing the community estate. Primarily, she challenges the district court's $30,000 award to Mathijssen. She argues that the district court "failed to explain the composition of the award," and she disputes the district court's finding that Gan "caused this divorce to be much more difficult and expensive than necessary." She also argues that some of her expenditures following the separation were used for necessary expenses, such as her moving from Austin to Katy, and

13

thus were not wasteful, that the district court failed to segregate her spending during the marriage from her spending after the separation, and that the district court failed to consider the circumstances of the parties at the time of divorce. Further, she argues that the property should have been divided equally according to Dutch law as specified in a premarital agreement between the parties, rather than equitably, and that the district court erred in awarding the full amount of the Philadelphia tax refund to Mathijssen.

The trial court is authorized to "order a division of the estate of the parties in a manner that the court deems just and right," Tex. Fam. Code § 7.001, and the trial court has "wide discretion" in that regard, *Murff*, 615 S.W.2d at 698. "Mathematical precision in dividing property in a divorce is usually not possible." *Id.* at 700. "Every reasonable presumption should be resolved in favor of the proper exercise of discretion by the trial court in dividing the property of the parties." *Zieba v. Martin*, 928 S.W.2d 782, 791 (Tex. App.—Houston [14th Dist.] 1996, no writ). "We presume on appeal that the trial court correctly exercised its discretion when dividing property in a divorce proceeding, and the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.) (*O'Carolan II*); *see Murff*, 615 S.W.2d at 700 ("Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse."); *see also O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) (*O'Carolan I*) ("To constitute an abuse of discretion, the property division must be manifestly unfair.").

We cannot conclude on this record that the district court's property division was "manifestly unfair." Regarding the $30,000 award to Mathijssen, the district court found that Gan's "financial actions, post-separation, were unwarranted and unfair to Mr. Mathijssen" and

14

"caused this divorce case to be much more difficult and expensive than necessary." These findings are supported by the record. Mathijssen testified that, upon their separation, Gan had transferred approximately $27,588 from their checking and other joint accounts into her separate accounts, transferred approximately $8,621 directly to her mother, and used approximately $16,975 to pay off her credit cards. In contrast, Mathijssen testified that the money that he transferred out of their joint accounts remained in a separate account at the time of trial. Thus, the district court could have reasonably inferred that while Mathijssen's financial actions preserved community funds, Gan's actions depleted community funds, which was unfair to Mathijssen and made the divorce more difficult and expensive than necessary, as her actions required Mathijssen and his counsel to investigate the expenditure of those funds. This is true even if the spending was for expenses that Gan considered "necessary." As for Gan's complaint that the district court failed to more precisely explain the composition of the $30,000 award, it was her burden to request additional findings of fact and conclusions of law on that amount, and she did not do so, thereby waiving this complaint on appeal.[2] *See* Tex. R. Civ. P. 298; *Barton v. Barton*, 584 S.W.3d 147, 155 (Tex. App.—El Paso 2018, no pet.).

Regarding Gan's complaints that the district court failed to segregate her spending during the marriage from her spending after the separation and that the district court failed to consider the circumstances of the parties in making its property division, the record does not reflect any such failures by the district court. To the contrary, as reflected in its letter ruling and its findings of fact and conclusions of law, the district court considered all the evidence presented in reaching its decision and accounted for both the separate and community property of the

---

[2] For the same reason, Gan waived her complaint on appeal that the district court failed to specify the total amount of marital property in its findings.

15

parties in dividing the property. Gan argues that a premarital agreement between the parties required the district court to divide the property equally according to Dutch law, but, as Mathijssen correctly observes, no premarital agreement was admitted into evidence during trial. Finally, we cannot conclude on this record that the district court abused its discretion in finding that awarding Mathijssen 100% of his Philadelphia tax refund was fair and equitable.

We overrule Gan's second issue.

## CONCLUSION

We affirm the district court's divorce decree on the division of property but reverse the amount of child support and render judgment that the amount of support will be $1,378.48 per month as provided in the Partial MSA.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed in Part; Reversed and Rendered in Part

Filed: January 29, 2026

16